```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**UNITED STATES OF AMERICA**

**v.**                            CRIMINAL ACTION No. 2:95-00002

**CHRISTOPHER J. BAILEY**

O R D E R

Pending are defendant's pro se Motion to Waive Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A) (ECF No. 280), filed May 3, 2021; defendant's pro se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 281), filed May 3, 2021; defendant's pro se Motion to Supplement (ECF No. 289), filed March 28, 2022; and defendant's pro se Motion to Supplement Request for a Sentence Reduction (ECF No. 290), filed on July 29, 2022. The defendant is currently serving a life sentence in federal custody for the kidnapping of his wife.

I.      Background

On May 23, 1995, Christopher J. Bailey ("Bailey") was convicted by a jury of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and interstate domestic violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2251(b).

According to the Presentence Report ("PSR") prepared in Bailey's case, the evidence presented by the government showed that at some time on the morning of November 26, 1994, Bailey's wife, Sonya Bailey ("Mrs. Bailey") suffered a head injury from a blunt object, "which left a three inch gash on her forehead."  PSR ¶ 12.  Mrs. Bailey's wound "bled enough to saturate her pillow, soak through the sheet and mattress cover and leave a pool of blood on the waterbed mattress."  Id. at ¶ 13.

After allowing her to bleed on the bed for approximately an hour, Bailey placed her in the trunk of her car.[1]  Id. at ¶¶ 13, 15.  Over the next six days, Bailey shuttled Mrs. Bailey, either in the trunk or backseat of the car, through different cities in Kentucky and West Virginia.  Id. at ¶¶

---

[1] "Various evidence found in the trunk of the car, including blood, a strong odor of urine and scratch and dent marks on the inside of the trunk door, indicate Mrs. Bailey was locked in the trunk for an undetermined time over the next six days."  PSR ¶ 15.

2

16–20. Finally, on December 1, 1994, Bailey took his wife to an emergency room in Corbin, Kentucky. Id. at ¶ 20.

"Based on the defendant's statement and the testimony of medical personnel, Mrs. Bailey was mostly unconscious during the six-day period and was incontinent." Id. at ¶ 21.

> Upon arrival at the emergency room at Baptist Regional Medical Center in Corbin, Kentucky, Mrs. Bailey was critically ill. She was in a deep coma, suffered from severe anoxic (without sufficient oxygen) brain injury and massively dehydrated. As a result of the dehydration, she suffered multi-organ failure.

Id. at ¶ 23.

Mrs. Bailey had many injuries including the large gash on her forehead, two black-eyes, a subconjunctival hemorrhage in her right eye, corneal abrasions because her contact lenses had been left in, bruises around her throat, ligature bruises on her wrists, rope burns on her ankles, abrasions on her knees, and pressure sores on her feet. Id. at ¶ 24.

At the time of the offense, Mrs. Bailey was 34 years old. Id. at ¶ 22. At the time the PSR was prepared, Mrs. Bailey remained incontinent, unable to walk, and unable to talk. Id. at ¶¶ 26–38. She was left unable to express her basic needs and was expected to require 24-hour care for the remainder of her life. Id. at ¶¶ 26–36.

3

Based on the foregoing, the PSR found that the base offense level for Bailey's kidnapping offense was 24. Id. at ¶ 43. Additionally, it found that the following specific offense characteristic enhancements applied, a 4-level increase because Mrs. Bailey sustained life-threatening and permanent bodily injury and a 2-level increase because Mrs. Bailey was a vulnerable victim. Id. at ¶¶ 44, 49. Accordingly, the total offense level was 30. Id. at ¶ 52.[2]

The PSR found that Bailey had four criminal history points for DUI related offenses; accordingly, he was placed in criminal history category III. Id. at ¶¶ 66–69.

At sentencing Judge Charles H. Haden II adopted the findings of the PSR, as related to the total offense level and Bailey's criminal history category. See Judgment, ECF No. 134, at 6. A total offense level of 30 and criminal history category of III produced a United States Sentencing Guideline range of 121 to 151 months. Id.

Judge Haden determined that a sentence within that 121 to 151 month range was insufficient and that aggravating

---

[2] Inasmuch as the total offense level for the kidnapping charge was higher than the total offense level calculated for the interstate domestic violence conviction, the court was to calculate Bailey's guideline range using the higher offense level of 30. PSR ¶¶ 53–62.

4

circumstances warranted an upward departure from the guideline range. Amended Judgment 9, ECF No. 140.

The aggravating circumstances found by the court were as follows:

> The offense resulted in permanent and life-threatening bodily injuries to Mrs. Bailey of a kind and degree not contemplated by the Guidelines. That is, Sonya Bailey suffered massive impairment to her total body functioning. Physically and mentally she has been reduced almost to a vegetative state. She is unable to care for herself now nor will she be able to achieve any form of independent living in the future.
>
> The scope and degree of Sonya Bailey's injuries were exacerbated by the Defendant's intentional, brutish conduct in transporting her over several days in the closed trunk of a moving automobile, without adequate medical care, and subjecting her to extreme oxygen deprivation and exhaust fumes, and with no attention to her personal needs. See 5K2.8, extreme conduct by the Defendant, and 5K2.2, exacerbated extreme physical injury.

Id.

Judge Haden also found that Mrs. Bailey's lack of practical potential to recover economic loss, the binding of Mrs. Bailey's ankles, and the fact that Bailey committed the offense while under a lifetime suspension of his driving privileges were additional aggravating circumstances not accounted for under the guidelines. Id. Judge Haden concluded that these "circumstances actually existed and concurred or

5

conjoined to result in horrendous criminal activity on the part of the Defendant, which was the proximate cause of the victim's injuries and which subject her now to a living death." Id.

In light of the foregoing, Judge Haden varied upward from Bailey's total offense level of 30 to one of 43, which called for a sentence of life. Id. Consequently, Bailey was sentenced to life on the kidnapping conviction and twenty-years, the statutory maximum, on the interstate domestic violence conviction. Id. at 1.

On August 28, 2019, in light of Johnson v. United States, 576 U.S. 591 (2015), and its progeny, Bailey's conviction for interstate domestic violence was vacated. See ECF No. 267; ECF No. 268. The court declined, however, to conduct a full resentencing on the kidnapping conviction. Accordingly, Bailey's life sentence remains in force.

Bailey, now 62 years of age, is currently serving his sentence at FCI Gilmer. Fed. Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/(last visited August 10, 2022).

## II.     Legal Standard

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence.  18 U.S.C. § 3582(c).  In December 2018, however, Congress enacted the First Step Act, which amended 18 U.S.C. § 3582 and enabled courts to reduce a term of imprisonment under certain circumstances.  First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

As amended, § 3582 provides that after satisfying an administrative exhaustion requirement,[3] courts may reduce a sentence if (1) "extraordinary and compelling reasons warrant such a reduction," (2) "reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) release is consistent with the factors listed under 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has clarified that at the current time there are no "applicable policy statements issued by the Sentencing Commission."  See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020).  Accordingly, the court is not limited

---

[3] Despite filing a motion asking the court to waive the exhaustion requirement, ECF No. 280, Bailey attached exhibits to his motion for compassionate release indicating that he sought compassionate release from the BOP in April of 2021.  See ECF No. 281-1, at 27-28.  Accordingly, the court assumes that Bailey has properly exhausted his administrative remedies.

7

by an enumerated list of reasons that warrant relief and "enjoy[s] broad discretion in conducting this analysis." United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).

### III. Analysis

In his motions, Bailey claims that he is eligible for a reduction in his sentence or a release from incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A). In support of his motion, Bailey argues (1) that his record while incarcerated demonstrates "his commitment to full rehabilitation"; (2) that his age and medical conditions, specifically asthma, hypertension, and a past hospitalization for pneumonia, place him at high risk for severe illness if he should become infected with COVID-19; (3) that his elderly mother and his brother require his assistance; (4) that there is a "gross disparity between the mandatory sentence which he received prior to United States v. Booker, 543 U.S. 220 (2005), and the term of imprisonment which he would receive today"; (5) that the "Bureau of Prisons has demonstrated an inability to properly provide him with the needed medical care and attention which his health demand"; (6) that the lockdowns and restrictions imposed by the BOP due to the COVID-19 pandemic are "harsh conditions" that "exceed[] what the Court anticipated at the time of sentencing"; and (7) that the court has not yet considered the § 3553(a)

8

factors in his case. ECF No. 281, at 2, 10–14; ECF No. 289, at 2–4; ECF No. 290.

With regard to the first of Bailey's concerns surrounding COVID-19 and claims that his mother and brother require his assistance, the court notes that it has already rejected these factors as grounds for compassionate release in Bailey's case.

On December 11, 2020, the court entered an order denying Bailey's first motion for compassionate release, which asserted, <u>inter alia</u>, that his underlying health conditions and age put him at an increased health risk should he contract COVID-19 and that his elderly and ill mother and brother require his assistance.  ECF No. 275.  Therein the court concluded that "[w]hile defendant's health status and family situation are regrettable, they do not amount to 'extraordinary and compelling reasons' for granting a reduction or release as required by §3582." <u>Id.</u> at 4.  The court went on to find that Bailey had "not shown himself to be at undue risk of contracting COVID-19," nor had he "shown substantial diminishment of his ability to provide self-care in the environment of the correctional facility."  <u>Id.</u> at 5.

Those findings remain true.  Inasmuch as Bailey has simply reasserted these same grounds — without additional

9

evidence[4] — as reasons warranting compassionate release, the court continues to find them neither extraordinary nor compelling.

Additionally, the court notes that as of August 10, 2022, the BOP reports that there are zero cases of COVID-19 amongst inmates at FCI Gilmer. See Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited August 10, 2022). Inasmuch as there is a marked presence of COVID-19 outside the prison system, the court simply cannot find that Bailey is more likely to contract COVID-19 at FCI Gilmer than he would be if released. See United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious or even fatal, case of COVID-19.").

To the extent Bailey submits that there is a disparity between the sentence he received and the sentence he would receive if sentenced today, the court finds this argument lacks

---

[4] Indeed, the instant motion is premised upon the same medical records as the first.

merit. While the Fourth Circuit has held that changes in sentencing law can support compassionate release under § 3582(c)(1)(A)(i), see United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020), no such changes have been made to either statutory law or the United States Sentencing Guidelines that would suggest a lower sentence in Bailey's case. Inasmuch as the United States Sentencing Guidelines still permit the sentencing court to depart upward from the guidelines and the statute under which Bailey was sentenced still allows for the imposition of a life sentence, the court finds Bailey's sentencing disparity argument unpersuasive.

With regards to Bailey's claim that the "Bureau of Prisons has demonstrated an inability to properly provide him with the needed medical care and attention which his health demand," the court finds that Bailey has failed to provide evidence that he has significant medical needs or that the BOP has failed to adequately respond thereto. Indeed, the little evidence supplied by Bailey indicates that as of April 2020, Bailey was being provided medication for his diagnosed conditions and was scheduled for routine lab tests. ECF No. 281-1, at 8–9.

To the extent Bailey asserts that the "harshness being caused by the numerous lockdowns and restrictions imposed by the

11

Bureau of Prisons on inmates in order to contain [COVID-19] infections" are "harsh conditions" that "exceed[] what the Court anticipated at the time of sentencing," ECF No. 289, at 6, the court has not been presented with evidence from Bailey that he is living under unduly punitive conditions.

Finally, to the extent Bailey submits that compassionate release is appropriate based upon his rehabilitative efforts, the court remains unpersuaded. Bailey states he has completed more than 116 rehabilitative programs while in BOP custody. While the court commends Bailey for his rehabilitative efforts, those efforts along with the other reasons he proffers are not sufficient grounds for compassionate release.

Additionally, the court takes exception to Bailey's reference to his crime as a "non-violent offense," and his accompanying complaint of "Courts handing out 'Life sentences' for non-violent offenses." See ECF No. 281, at 11–12. Indeed, that is the reason the court recounted his heinous conduct at the outset of this order. While kidnapping may not categorically be a "crime of violence," because it does not require the use of force as an element, see United States v. Walker, 934 F.3d 375, 379 (4th Cir. 2019), Bailey's actions were far from non-violent. Bailey, among other acts, hit Mrs. Bailey

12

with a blunt object, physically bound her legs with rope, and shoved her in the trunk of a car for days, subjecting her to "a living death" and leaving her in a near "vegetative state." Suggesting his odious conduct was non-violent serves only to undermine his claims of rehabilitation.

Moreover, the court finds he remains a danger to the community and early release would not be consistent with the factors set forth in § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the need for the sentence (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (2) to afford adequate deterrence to criminal conduct"; (3) "to protect the public from further crimes of the defendant;" and (4) "to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a).

Bailey's life sentence was not imposed without due reason. Given the particularly cruel nature of Bailey's actions, Judge Haden departed upward from the guideline range assigned by the United States Sentencing Guidelines. In imposing the upward departure, Judge Haden stated,

> The Court has considered every offense level above level 30 and concludes that no offense level short of level 43, calling for life imprisonment, will suffice to punish the Defendant adequately for his conduct and to incapacitate him and thus prevent him from injuring others in similar circumstances and to finally deter others from engaging in similar heinous conduct.

Amended Judgment 9.

Indeed, Bailey's actions represent some of the most callous and reprehensible this court has seen. Abbreviating his sentence would not comport with the needs of sentencing.

In sum, the court continues to find that the nature and circumstances of the offense, the history of the defendant, the need to protect the public from further criminal conduct, and the needs of deterrence continue to weigh in favor of lifelong incarceration.

IV. Conclusion

Accordingly, the court ORDERS as follows:

1. That defendant's pro se Motion to Waive Exhaustion Requirement of 18 U.S.C. § 3582(c)(1)(A) (ECF No. 280) be, and it hereby is, denied as moot;

2. That defendant's pro se Motion to Supplement Request for a Sentence Reduction (ECF No. 289) and defendant's pro se Motion to Supplement Request for a Sentence Reduction (ECF No. 290) be, and hereby are, granted in part. The motions are granted to the extent they seek to supplement defendant's motion for compassionate release (ECF No. 281) but are otherwise denied; and

3. That defendant's pro se Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 281) be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to the defendant and all counsel of record.

ENTER: August 12, 2022

John T. Copenhaver, Jr.
Senior United States District Judge